**WHITESIDE et al. v. TACKETT et al.**

No. 9875.

Court of Civil Appeals of Texas. Austin.

April 19, 1950.

Gormley & Ragsdale, of Dallas, for appellants.

Sam J. Dotson, of San Angelo, for appellees.

HUGHES, Justice.

This is a trespass to try title suit involving the title to and possession of forty acres of land and being the S.E. ¼ of the S.W. ¼ of Section 291, Block 1-A, H. & T. C. R. R. Co. Survey, in Coke County.

Appellants, who were plaintiffs below, base their claim entirely upon limitation title acquired, so they say, by Rufus Whiteside under the 10-year statute of limitation. Article 5510, Vernon's Ann.Civ.St.

Appellees, Mrs. Maggie B. Davis and others, own the record title to the lands in suit.

Only two issues were submitted to the jury. The first was: "Do you find from a preponderance of the evidence that the land in controversy (describing it), prior to the year 1916 was enclosed by fence with less than 5,000 acres of land belonging to or claimed by plaintiffs, or their predecessor in title. Answer yes or no. Answer: No."

Only in the event this issue was answered "Yes" was the jury directed to answer the second special issue, which submitted the elements of the 10-year statute of limitation. Accordingly, the jury made no answer to this issue.

No objections were made by the parties to this conditional submission of Special Issue No. 2.

Appellants' three points raise two questions,—the first that there was no evidence to support the answer of the jury to Special Issue No. 1, and, second, that limitation title was established as a matter of law.

Several witnesses testified that the pasture in which the disputed lands were located contained less than 5,000 acres. We will not detail this testimony but will set out fully all the evidence showing or tending to show that the pasture contained more than 5,000 acres.

A lease contract of the Whiteside ranch showed that the entire ranch contained 6117½ acres. This fact and the testimony of the witnesses Devoll and Hubbard are relied upon by appellee as supporting the answer of the jury to special issue No. 1. In his brief appellee sums up and makes use of the testimony of the witness Hubbard in this fashion:

"Appellant's witness Hubbard also testified that there was a fence line which cut off the north part of the ranch from the south part of the ranch, and that the north pasture had approximately 800 acres in it.

"We have shown that as shown by plaintiff's Exhibits A and B, the rental contracts with Cave, the ranch contained 6117½ acres. If 800 acres is taken off for the north pasture, the large pasture where the land involved in this suit is situated, would contain 5317½ acres, according to the evidence introduced by appellants."

Mr. Hubbard did testify as indicated but he went further and in addition to the 800 acres cut off and put into the north pasture he testified that about half of Section 267 was fenced out of the large pasture, estimating the acreage fenced out at 400; also that about ¾ths of Section 294 was fenced out of the large pasture, there being only from 120–150 acres of this section in the large pasture.

Mr. Hubbard had lived on the ranch from 1914 to 1938 and he estimated the acreage in the south or large pasture as being 4,000 acres, stating that there "never was 5,000 acres in that pasture since my time."

Mr. Devoll, a witness for appellants, testified that he worked on the Whiteside ranch in 1921, and that at that time the large pasture had seven sections (4480 acres) in it and that the fence between these lands and Section 290 was down so that in reality the large pasture at that time contained eight sections or 5120 acres. His testimony concerning fences is extremely hard to understand because it was made with reference to a map, the points on which were not sufficiently identified by the witness to make his testimony very intelligible.

It is sufficient to say, however, that the testimony of Mr. Devoll related to the existence and location of fences in the year 1921. The time inquired about in Special Issue No. 1 was "prior to the year 1916."

Furthermore, it was shown on cross examination of this witness that he testified in the case of Whiteside v. Utterson, Tex.Civ.App., Austin, 219 S.W.2d 729,

Writ Ref. NRE, a case which involved the same ranch but a different tract of land. The cross examination went this way:

"Then, didn't I say, 'All right, if he (Whiteside) had 5900 acres at that time and he took out 800 to a thousand acres for the north pasture that would be approximately 4900 acres, 5000 acres? A. That seems about it.

"Q. And you said 'something like that.' I said, 'And then taking out approximately 400 acres out for the mare pasture that would bring it down to approximately 4600 acres, wouldn't it; and you take out 40 acres for the hog pasture, that leaves you about 4500 acres, wouldn't it?' And didn't you answer, 'Something like that?' And I said, 'Take out 200 acres for the Horse Trap, wouldn't that leave you about 4300 acres?' And you answered, 'Something like that? A. Seems to me that is right."

■ Appellees' evidence on this point is so unsatisfactory that, in our opinion, the negative answer of the jury to Special Issue No. 1 is so against the preponderance of the evidence as to be clearly wrong.

Appellants' last point preserved by motions for directed verdict and for judgment notwithstanding the verdict, that limitation title was established as a matter of law is overruled.

The forty acres sued for was enclosed in a pasture containing several thousand acres and was used only for grazing purposes. No improvements were made on the forty acres. There is no direct evidence that the ranch was fenced by Rufus Whiteside or appellants, or that they participated in building such fences. Rufus Whiteside was dead at the time of trial. Except as to general statements attributed to Mr. Whiteside, such as "I own my ranch," the adverse nature of his possession of the land in suit is established only by the physical facts and the use made of the property.

There was also evidence of nonpayment of taxes on these lands by the Whitesides and proof that subsequent to claims of ownership made by Mr. Whiteside to "his ranch" that he bought lands embraced within the outside fences.

At most the establishment of title by ten years adverse possession was an issue for the jury. Nelson v. Morris, Tex.Civ. App., Fort Worth, 227 S.W.2d 586.

Appellees have a counter point in which it is contended that because of the conditional submission of Special Issue No. 2 appellants have waived their right to have the jury pass upon their claim of title by limitation and that a finding by the court on this issue, adverse to appellants, should be presumed in support of the judgment. The cases relied upon are Clark v. National Life & Accident Co., 145 Tex. 575, 200 S. W.2d 820, and Little Rock Furniture Mfg. Co. v. Dunn, Tex.Sup. 222 S.W.2d 985, 990.

In the first case cited it is merely held that the party having the burden of establishing the elements of fraud and, the evidence being disputed, not requesting submission of appropriate issues to the jury waived this ground of recovery.

In the Dunn case, supra, the question was whether or not there was conflict in the jury's answers to special issues. The jury found in one issue that respondent was negligent and in another issue that he was not, but the issue of proximate cause was conditioned on an affirmative answer to both issues of negligence. The court held that petitioner waived its right to a jury answer of the unanswered issue on proximate cause and that this issue must be taken as having been answered by the court in such manner as to support the judgment. In the court's opinion this statement appears: "In the following cases it has been held that where the charge of the court instructs the jury to answer a special issue only conditionally, and the jury in compliance with the instruction fails to answer the issue, a party who did not object to the conditional submission waives the right to have the issue answered and also necessarily waives the right to any benefits which he might receive from a favorable answer to such issue. Texas Employers' Ins. Ass'n v. Ray, Tex.Civ. App., 68 S.W.2d 290, writ refused; Spears Dairy v. Davis, Tex.Civ.App., 125 S.W.2d 382; International-Great Northern Ry. Co.

v. Acker, Tex.Civ.App., 128 S.W.2d 506, writ dismissed, judgment correct; Bankers Standard Life Ins. Co. v. Atwood, Tex.Civ. App., 205 S.W.2d 74."

The cases cited by the Supreme Court are based upon Article 2185, R.C.S.1925, now repealed, the substance of which has been brought forward in Rule 272, Texas Rules of Civil Procedure. The statute and the rule provide that objections to a court's charge to the jury not made and presented as prescribed "shall be considered as waived."

In the case of Spears Dairy v. Davis, cited by the Supreme Court in the Dunn case, supra, appellant complained for the first time on appeal that it was harmed by the conditional submission of certain issues. Appellant pressed this argument upon the court: "'We do not believe the Court can properly dispose of this matter by saying to appellant—"You come too late; you should have objected to the form of the submission of these issues." To so answer appellant's contentions would be, in effect to say to appellant—"You should have anticipated that the jury would answer Special Issue No. 38 in the negative, even though all of the evidence presented before them was without dispute and called for an affirmative answer to the issue."'" 125 S.W.2d 383.

Which was answered by the court as follows: "Special Issue No. 38 was duly submitted to the jury, and appellant was required to reserve against it the exceptions necessary to preserve and protect its defense; since the issue was submitted by the court's charge, appellant was required to anticipate that the jury might answer it in the negative. Not having reserved its exceptions, no assignment against the form of the issue is now available to appellant, nor that its form mislead the jury in answering their issues, nor took from them the right to answer other issues." 125 S. W.2d 383.

We find it impossible to avoid the effect of these holdings in the case before us.

Attention is also called to Rule 279, T.R. C.P., which provides, in part, that "upon appeal all independent grounds of recov-

912

ery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived."

Establishment of title by ten years adverse possession was appellants' sole ground of recovery. The conditional submission of this issue to the jury was equivalent to no submission at all when the event upon which its submission hinged did not occur. We, therefore, conclude, limitation title not having been established as a matter of law, that appellants waived their only ground of recovery.

This holding may seem severe in view of our decision that the answer of the jury to the first special issue was unwarranted, but a contrary ruling would be opposed to the law declared by the Supreme Court, as we understand it, would conflict with Rules 272 and 279, T.R.C.P., and would result in the trial of cases piecemeal.

The judgment of the trial court is affirmed.